## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHN RUSSELL MUNSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-369-RLB** |
| **COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION** | **CONSENT CASE** |

## RULING

Plaintiff, John Russell Munson (Plaintiff), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for disability insurance benefits (DIB) "under Title II and Part A of Title XVIII of the Social Security Act" (Tr. 118).[1]  For the reasons assigned below, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** Plaintiff's Appeal **with prejudice**.[2]

## I.    PROCEDURAL HISTORY

On November 24, 2009, Plaintiff filed an application for DIB benefits (Tr. 11, 52, 118) alleging disability as of February 24, 2009 (Tr. 11, 118) because of rheumatoid arthritis (Tr. 68). Plaintiff's application was initially denied (Tr. 52) on February 1, 2010 because the Commissioner found Plaintiff's rheumatoid arthritis did not prevent him from performing his past relevant work as a meat-packing production supervisor (Tr. 68).  Plaintiff then filed a timely

---

[1] References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] at [page number(s)])."  Reference to the record of administrative proceedings filed in this case is designated by "(Tr. [page number(s)])."

[2] The parties agreed to conduct proceedings and obtain judgment before a United States Magistrate Judge under 28 U.S.C. § 636(c). (Parties' Consent, R. Doc. 11); (Referral Order, R. Doc. 24).

request for a hearing (Tr. 72) before an Administrative Law Judge (ALJ) on February 12, 2010. The hearing took place on December 1, 2010 (Tr. 25-50); Plaintiff, represented by counsel (Tr. 11, 27) appeared and testified (Tr. 25, 29-45).  Vocational Expert, Thomas Mongol, also testified at the hearing. (Tr. 25, 27, 45-49).

The ALJ rendered an unfavorable decision (Tr. 11-21) on behalf of the Commissioner on January 26, 2011 (Tr. 8-10), finding Plaintiff had "not been under a disability . . . from February 24, 2009, through the date of [the] decision" (Tr. 10, 16).  Plaintiff's request for review (Tr. 7) was denied by the Appeals Council on April 19, 2012 (Tr. 1-3).  The ALJ's decision rested as the final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ").  The ALJ's final decision is now ripe for review under 42 U.S.C. § 405(g).

## II.     STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)).  The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no

2

substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted).  Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000).  If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III.    ALJ'S DETERMINATION

The Commissioner, through the ALJ, works through a five-step sequential evaluation process to determine disability.  *See* 20 C.F.R. § 404.1520(a)(4).  The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability.  If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991)

3

(explaining the five-step process).  First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c).  At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments).  Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work.  20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work.  20 C.F.R § 404.1520(g)(1).  If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ first found Plaintiff met the "insured status requirements of the Social Security Act through December 31, 2013" and had "not engaged in substantial gainful activity (SGA) since February 24, 2009." (Tr. 13).  At step 2, Plaintiff had the following severe impairments: rheumatoid arthritis, obesity and back pain. (Tr. 13).  The ALJ then determined Plaintiff did not meet or medically equal a Listing at step three — specifically Listing 1.02 (Dysfunction of a Joint).  Before step 4, the ALJ "carefully considered the entire record" to determine Plaintiff's residual functional capacity. (Tr. 14-19).  Based on the record, Plaintiff had the "residual functional capacity to perform sedentary work . . . except the claimant is unable to

4

perform constant fingering." (Tr. 14).  Moving to the fourth step, the ALJ relied on testimony

from Plaintiff and the VE, as well as the Dictionary of Occupational Titles (DOT). (Tr. 19).  He

determined that Plaintiff could no longer perform his past relevant work as a: Cured Meat

Supervisor (Light), Chemical Plant Operator (Medium), Forklift Operator (Medium), and

Veterinary Food Inspector (Light). (Tr. 19).  At step 5, the ALJ found Plaintiff could perform

other jobs in the national economy, including Receptionist and Information Clerk, based on the

VE's testimony and Plaintiff's RFC, age, education and work experience. (Tr. 19-20).

Ultimately, Plaintiff had "not been under a disability . . . from February 24, 2009, through the

date of [the] decision." (Tr. 20).

## IV.    ASSIGNMENTS OF ERROR

Plaintiff's brief lists four specific assignments of error.[3]  However, not all are addressed

in his argument — which includes additional errors not listed earlier in his brief.  Plaintiff first

lists the following errors:

> (1) The opinions, diagnosis and medical evidence of claimant's treating physician,
> who was familiar with his condition was not accorded considerable weight in
> determining his disability, nor was good cause shown to the contrary.

> (2) The Administrative Law Judge abused his discretion in rejecting the opinion
> of the treating physician and did not give an adequate detailed analysis of the
> treating physician's view.

> (3) The Administrative Law Judge rejected Dr. Bourg's findings based in part on
> the unsubstantiated speculation that somehow the treating physician sympathized
> with Mr. Munson for 'one reason or another' . . . . This is not a permissible basis
> to reject the findings of a treating physician and assumes facts not in evidence. It
> amounts to pure speculation and conjecture.

> (4) The Administrative Law Judge did not take into account the possibility that
> despite the American's with Disabilit[ies] Act, that the accommodations that

---

[3] Plaintiff's counsel is advised that Local Rule 10.1 requires that all papers drafted for filing "shall be double spaced" and "printed in no smaller than standard 12-point" font.  Plaintiff's entire Statement of Facts and Argument is single spaced.  Filings that fail to comply with this Courts Local Rules in the future may be rejected.  The Local Rules of the Middle District can be found at: http://www.lamd.uscourts.gov/localrules/local_rules_3-11-11.pdf.

would be required in order to comply with Dr. Bourg's restrictions might make
Mr. Munson unemployable.

(R. Doc. 21 at 12).

The first three assignments of error all concern the weight given to Plaintiff's treating physician, Dr. Angela Bourg, and will be addressed together.  Plaintiff's fourth assignment of error is neither addressed nor mentioned in the argument section of his brief or elsewhere. (R. Doc. 21 at 14-18).  Because Plaintiff has not adequately developed this argument, the Court does not address it. *See Riecke v. Barnhart*, 184 F. App'x 454, 456 n.3 (5th Cir. 2006) (refusing to consider plaintiff's "vague, unsupported arguments" which he offered "no evidence" or "authority" to support and only referenced once in his brief); *Mobley v. Shalala*, 50 F.3d 1032, *2 n.4 (5th Cir. 1995) (The Fifth Circuit "would not address the merits of [certain] claims because issues not argued in an appellant's brief on appeal are considered waived.").[4]

Beyond this list, Plaintiff additionally argues that his "allegations of debilitating symptoms should be deemed credible." (R. Doc. 21 at 14).  Finally, Plaintiff argues the ALJ "did not give adequate consideration to the findings of the Department of Veterans Affairs," which determined he was 70% disabled. (R. Doc. 21 at 15).

## V.    DISCUSSION

### A.    Treating Source Rule

Plaintiff suggests the ALJ erroneously rejected his treating physician Dr. Angela Bourg's opinion without discussing the *Newton* factors and without good cause. (R. Doc. 21 at 15, 17-

---

[4] Plaintiff's fourth assignment of error would otherwise fail because unlike the Americans with Disabilities Act, the Social Security Act "does not take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when [he or] she applies for SSDI." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999) (explaining one of several fundamental distinctions between the Social Security Act and the Americans with Disabilities Act, 42 U.S.C. §§ 12102(1)(A)-(C), 12111(8)).  "[T]he ADA and the disability provisions of the Social Security Act have different purposes and have no direct relationship to each other." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999) (vocational expert's opinion that jobs permitted a sit/stand option did not suggest that employers would make an ADA accommodation, but only that a sit/stand option was prevalent in those jobs as they are typically performed).

18).  Generally, the "opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see also* 20 C.F.R. § 404.1527(c)(1) (examining physician opinion given more weight than non-examining physician). "Absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in" the Regulations. *Newton*, 209 F.3d at 453 (citing 20 C.F.R. § 404.1527(d)(2) (current version at 20 C.F.R. § 404.1527(c)(2)-(6) (2012))).[5]  However, the ALJ is not required to consider each of the six *Newton* factors when "there is competing first-hand medical evidence . . . ." *Walker v. Barnhart*, 158 F. App'x. 534, 535 (5th Cir. 2005) (quoting *Newton*, 209 F.3d at 458).

When the record contains medical evidence from multiple treating sources, the ALJ is "not required to go through all six steps in *Newton*" because "the ALJ is responsible for resolving conflicts in the evidence, and we will not substitute our judgment for his." *Cain v. Barnhart*, 193 F. App'x. 357, 360 (5th Cir. 2006) (citing *Newton*, 209 F.3d at 452, 458; *Walker*, 158 F. App'x at 534); *see also King v. Comm'r of Soc. Sec. Admin.*, No. 12-752, 2014 WL 905207, at *4 (M.D. La. March 7, 2014) (*Newton* not applicable when ALJ is presented with competing first hand medical evidence); *Powers v. Comm'r of Soc. Sec. Admin*, No. 12-448, 2014 WL 791867, at *7 (M.D. La. Feb. 25, 2014) (same).

The Court has reviewed the decision and finds no support for Plaintiff's contentions.  As an initial matter, *Newton* and its required "detailed analysis" do not apply to Plaintiff's case

---

[5] Those criteria provide that the ALJ consider: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence supporting the opinion; (4) consistency of the treating physician's opinion with the record as a whole; (5) whether the opinion is that of a specialist; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6).

because the record contains competing first-hand medical evidence from other treating and examining sources, such as Dr. Wilson.[6]  And so, Plaintiff incorrectly suggests the ALJ was required to analyze Bourg's opinion using the 6 factors described in *Newton* and 20 C.F.R. § 404.1527(c)(2)-(6).  *See Walker*, 158 F. App'x at 535.  Second, the ALJ not only stated that he discredited the opinion, he went beyond what was legally required by specifying the discredited portions of Bourg's opinion and providing detailed reasons for each, including contradictory record evidence.  Specifically, the ALJ discredited: (1) the extreme degree of limitations assessed by Dr. Bourg because they were inconsistent with the other medical records, including her own; and (2) Dr. Bourg's opinion of Plaintiff's ability to lift, sit, stand, walk and attend work regularly because it conflicted with Plaintiff's own testimony. (Tr. 18).  The ALJ gave a detailed overview of all the medical records from Plaintiff's treating and examining physicians, including Dr. Bourg. (Tr. 15-18).  Considering the ALJ did assign weight to the opinion by specifically indicating which portions he discredited and why, there is no merit to Plaintiff's argument that the ALJ violated *Newton* or 20 C.F.R. § 404.1527(c)(2)-(6).  As such, no legal error occurred.

Second, the ALJ's decision to discredit these portions of Dr. Bourg's opinion is supported by substantial evidence because Dr. Bourg's and other physicians' records do not support the extreme limitations she placed on Plaintiff in her RFC assessment.  Dr. Bourg began

---

[6] Plaintiff refers to Dr. Wilson as a "consultative examiner" rather than a treating physician, as the Government contends and the ALJ found. (Pl.'s Brief, R. Doc. 21 at 15); (Gov't Brief, R. Doc. 23 at 7 n.4); (ALJ decision, Tr. 18).  Plaintiff does not develop the issue or offer any supporting argument; his brief simply refers to Dr. Wilson as a consultative examiner.  Nonetheless, the record shows Dr. Wilson is more appropriately classified as a treating physician.  Plaintiff first saw Wilson to obtain treatment and not for any consultative disability-related exam. (Tr. 194-207).  Wilson treated Plaintiff on at least three occasions and prescribed medication. (Tr. 194-207).  Moreover, Wilson administered injections for Plaintiff's rheumatoid arthritis (Tr. 194, 195), recommended that he go to physical therapy (Tr. 194), ordered x-rays and placed him on light duty at work (Tr. 194). *See Johnson v. Astrue*, 597 F.3d 409, 411 (1st Cir. 2009) (doctor who treated claimant 3 times at 3 month intervals considered treating source); *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (doctor whose treatment spanned one year, performed medical procedures and made objective findings as to claimant's impairment was treating source); *but see Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009) ("Dr. Hargraves only examined Giddings once, and is not entitled to the deference of a treating physician.").

treating Plaintiff around September of 2008. (Tr. 177).  Her records document Plaintiff's

complaints of hand, foot, ankle, knee, shoulder and back pain (Tr. 177-84, 213-24, 302-08) and

indicate diagnoses of Seropositive Rheumatoid Arthritis (SPRA)[7] in September of 2008 (Tr.

177) and synovitis in March of 2010 (Tr. 308).[8]  After providing a detailed summary of Dr.

Bourg's records and those of other physicians (Tr. 15-17), the ALJ explained that Bourg's

residual functional capacity assessment "departs substantially" from the other medical records

and Plaintiff's own testimony. (Tr. 18).  The Court agrees.

Dr. Bourg suggested Plaintiff's impairments prevent him from standing longer than 5

minutes and restrict him to lifting less than 10 pounds and sitting no more than 20 minutes at a

time but for less than 2 hours in an 8 hour workday. (Tr. 239).  According to Bourg, Plaintiff

could not walk more than one city block. (Tr. 239).  Dr. Bourg also explained Plaintiff needed

the freedom to shift positions at-will during the day. (Tr. 239).  Plaintiff will also require breaks

"twice [per] hour," and 10 hours of rest in between workdays. (Tr. 240).  Dr. Bourg further

estimated Plaintiff's impairments will cause him to miss work 3 days a month and that the

severity of his pain would interfere with his concentration and attention. (Tr. 241).

---

[7] The ALJ incorrectly refers to SPRA as "status post rheumatoid arthritis." (Tr. 16).

[8] Arthritis is the "[i]nflammation of a joint or a state characterized by inflammation of joints." Thomas Stedman, *Stedman's Medical Dictionary* (Stedman's), 33080 (27th ed. 2000) (Arthritis).

Rheumatoid arthritis is "a generalized disease . . . which primarily affects connective tissue; arthritis is the dominant clinical manifestation, involving many joints, especially those of the hands and feet, accompanied by thickening of articular soft tissue, with extension of synovial tissue over articular cartilages, which become eroded." Stedman's at 33080 (Arthritis – rheumatoid arthritis).

Seropositive is defined as: "Containing antibody of a specific type in serum; used to indicate presence of . . . a diagnostically useful antibody (*e.g.*, rheumatoid arthritis with rheumatoid factor)." Stedman's at 371260 (Seropositive). In other words, seropositive rheumatoid arthritis simply means an individual's rheumatoid factor blood test is positive.  2 Lee R. Russ, et al., *Attorneys Medical Advisor* § 19:76 (Supp. 2013) (Rheumatoid arthritis – rheumatoid factor; RF – test).

Synovitis is the "[i]nflammation of a synovial membrane, especially that of a joint; in general, when unqualified, the same as arthritis." Stedman's at 397520 (Synovitis). "Rheumatoid arthritis involves synovitis.  In rheumatoid arthritis, the synovial membrane lining the joint becomes inflamed." *Symens v. Colvin*, No. 13-3006, 2014 WL 843260, at *2 n.11 (D.S.D. March 4, 2014).

The ALJ pointed out (Tr. 18), however, that Plaintiff inconsistently testified he could remain seated through his 90 minute classes at Louisiana State University (Tr. 36, 40) and has not missed a day of school because of his impairments, despite taking classes 5 days a week (Tr. 32, 36).  Plaintiff also testified that he performs housework (Tr. 44), can lift 10 pounds (Tr. 34), walk 1/8 of a mile or more with his cane (Tr. 34-35), ordinarily drives a standard automobile (Tr. 31) and spends most days studying and rose gardening (Tr. 37-38).  As the ALJ observed, this testimony cannot be reconciled with Dr. Bourg's opinion.

Dr. Bourg's assessment is also inconsistent with her own treatment records.  Dr. Bourg's RFC cites the following "positive objective signs" and clinical findings as support for Plaintiff's assessed limitations: reduced range of motion, joint warmth, reduced grip strength, impaired sleep, tenderness, crepitus, redness and swelling. (Tr. 237).  However, Dr. Bourg's actual treatment records do not corroborate these "positive objective signs," most of which are not found in any of Bourg's records.  Before her September 17, 2010 RFC assessment, Dr. Bourg only notes two instances of swelling in Plaintiff's hands and wrists, one instance of joint warmth in Plaintiff's left mid foot and one instance of stiffness reported by Plaintiff. (Tr. 177) (Bourg noted swelling in right hand but Plaintiff indicated pain and swelling were improving on September 30, 2008); (Tr. 217) (Plaintiff reported "less swelling" on September 1, 2009); (Tr. 219) (Plaintiff reported occasional pain and stiffness on June 4, 2009); (Tr. 306) (Bourg noted warmth in his left mid foot on July 1, 2010).  As for impaired sleep, Dr. Bourg's notes make only one reference to the quality of Plaintiff's sleep and it indicates he reported sleeping well. (Tr. 177).

Dr. Bourg also did not regularly assess Plaintiff's range of motion, tenderness, grip strength, etc.  Her treatment notes are written on a standard examination form that provides space

for her to record any limitations in range of motion or other clinical findings concerning the patient's hands, wrists, knees, shoulders, back, feet, etc.  On almost every visit, Dr. Bourg left no notation regarding Plaintiff's hands, wrists, shoulders, knees, back or feet; however, she did consistently report that Plaintiff presented with normal gait and station. (Tr. 180, 181, 218, 303, 306, 308).  Bourg's records also note Plaintiff was on light duty at work in September of 2008 and that Bourg had only restricted Plaintiff's activities on one occasion to lifting 25 pounds or less. (Tr. 177, 180).  But at the same visit, Dr. Bourg otherwise advised Plaintiff to continue his regular activities. (Tr. 177, 180).  While Bourg's records support that Plaintiff's impairments limit his ability to walk long distances, write and lift heavy objects, as the ALJ found, they do not support the degree of limitation Dr. Bourg described in her RFC assessment. (Tr. 14).

Dr. Bourg's records are also inconsistent with those of Plaintiff's other treating and examining physicians.  Dr. Steven Wilson, whose opinion the ALJ adopted, began treating Plaintiff in May of 2008. (Tr. 195, 204-06).  On May 8, 2008 Plaintiff presented with "swelling of the MP joints of both hands" and "some minimal swelling of the knees." (Tr. 195).[9]  Dr. Wilson's orthopedic and neurological examination revealed "no evidence" of muscle spasm, weakness or atrophy and no gross deformity or decreased range of motion in any joints of the upper extremities. (Tr. 195).  Sensation was normal in the upper extremities and there were no objective or subjective findings of numbness. (Tr. 195).  Plaintiff's lower extremities did not indicate any muscle atrophy, weakness or spasm and there were no signs of gross joint deformity. (Tr. 195).  Plaintiff had good strength in the lower extremities, a negative straight leg raising test and no signs of numbness. (Tr. 195).  Dr. Wilson instructed Plaintiff to begin physical therapy, which he did. (Tr. 195, 197-202).  Plaintiff's physical therapy progress notes

---

[9] "MP joints" refer to the metacarpophalangeal joints — the largest joints of the hand located at the base of the fingers.  *See Metacarpophalangeal Joint Arthritis*, American Society for Surgery of the Hand, 1 (2012), http://www.assh.org/Public/HandConditions/Documents/Web_Version_PDF/MPJoint.pdf.

were constantly forwarded to and reviewed by Dr. Wilson.  On May 26, 2008 Dr. Wilson's orthopedic and neurological examination of Plaintiff's upper and lower extremities revealed the same objective findings as his May 8, 2008 exam. (Tr. 194).  On June 16, 2008, Dr. Wilson reported full range of motion and no significant tenderness in both of Plaintiff's hands and noted minimal swelling in the MP joint of the right hand. (Tr. 194).  On that same day, Dr. Wilson instructed Plaintiff to begin light duty at work. (Tr. 194).  During his treatment, Dr. Wilson also prescribed medications — Naproxen (Naprosyn), Tramadol and Ultram — and gave Plaintiff injections of Depo-Medrol and Xylocaine in the MP joint of his right hand. (Tr. 164-95).

Unlike Dr. Bourg, during Dr. Wilson's January 28, 2010 appointment in connection with his RFC assessment, he examined and reported specific findings on Plaintiff's upper and lower extremities, hands, wrists and knees, in addition to taking x-rays of Plaintiff's hands, wrists and knees. (Tr. 226-27).  Dr. Wilson also interviewed Plaintiff prior to that exam.  During his interview, Plaintiff reported pain in both hands, wrists and knees. (Tr. 226).  He explained that the pain in his knees, hands and wrists becomes severe if he has to "use his hands and wrists a great deal or if he has to stand a great deal." (Tr. 226).  Plaintiff also informed Dr. Wilson that his medication helped "a great deal" with the pain, "but he has still been unable to return to work at Dow Chemical" because "he was doing labor work there where he had to lift more than 50 pounds on a regular basis." (Tr. 226).  These statements indicate Plaintiff does have the residual functional capacity to perform sedentary work without constant fingering which would allow him to avoid standing and using his hands and wrists "a great deal."

Dr. Wilson's examination of Plaintiff's upper and lower extremities again revealed no evidence of muscle spasm, atrophy or weakness. (Tr. 226-27).  There were no gross deformities, "decreased range of motion in any of the joints of the upper extremities," or any subjective or

12

objective evidence of numbness in the upper and lower extremities. (Tr. 226-27).  Plaintiff had good reflexes in his lower extremities and good strength in his feet and toes. (Tr. 227).  Also, Plaintiff's straight leg raising test was negative for both legs. (Tr. 227).  Dr. Wilson's hand and wrist examination revealed "no significant swelling in either the hands or the wrists," unlike previous visits. (Tr. 226).  Plaintiff had "full range of motion in all the joints of the index and middle fingers" as well as the "joints of the hands and wrists." (Tr. 226).  There was "no evidence of any neurological or vascular problem with either hand or wrist." (Tr. 226). X-rays of Plaintiff's hands and wrists showed "no acute fractures or dislocation," although Plaintiff was "now starting to develop some narrowing and arthritic changes in the metaphalangeal joint of the index and middle finger of both hands." (Tr. 227).  Plaintiff also had "some minimal changes at the metaphalangeal joint of the fifth finger." (Tr. 227).  Upon examination, Plaintiff's knees revealed "no evidence of significant swelling," "ligamentous instability" or "torn cartilage." (Tr. 227).  Both knees also exhibited full range of motion.  Consistently, x-rays of Plaintiff's knees showed "no evidence of any type of fracture, dislocation or other significant abnormality." (Tr. 227).

Based on his current and past treatment of Plaintiff, Dr. Wilson felt he could "return to gainful employment . . . where he does not have to lift more than 30 pounds or 10 pounds on a regular basis" and requires "only a minimal amount of bending, stooping, crawling or climbing." (Tr. 227).  Dr. Wilson did not otherwise limit Plaintiff's capacity to work and ultimately felt that "[m]otivation will be the largest determining" factor of whether Plaintiff returns to work. (Tr. 227).

The Court's review of Dr. Wilson's opinion reveals it is not only consistent with Plaintiff's sedentary RFC,[10] but also with the opinions of other physicians.  X-rays of Plaintiff's thoracic and lumbar spine taken on March 19, 2009 were overall "unremarkable" when reviewed by Dr. John Harris. (Tr. 223).  Plaintiff's had normal alignment of the thoracic spine with no evidence of compression or significant arthritic changes. (Tr. 223).  Dr. Harris explained that the lumbar spine had "normal alignment and a partial sacralization of the right L5 segment" but the "vertebral body and disc space height were maintained." (Tr. 223).  Physical therapy records show Plaintiff met all goals and achieved maximum treatment potential by his 7th session and indicate Plaintiff's impairments benefited from physical therapy. (Tr. 197-98).

Medical records from the VA do indicate crepitus and tenderness in Plaintiff's shoulders, knees and right ankle on September 23, 2009 (Tr. 267-68).  But Plaintiff otherwise presented with full range of motion in his elbows, wrists, fingers, thumbs, hips, knees, ankles and shoulders. (Tr. 268, 276-77).  Plaintiff also had normal muscle tone with no signs of atrophy (muscle weakness). (Tr. 276-77).  Plaintiff had normal sensation in his upper and lower extremities (Tr. 277) and normal reflexes in his arms, fingers, knees, ankles and feet (Tr. 278). September 23, 2009 knee and ankle x-rays showed the "joint space was well-maintained" and indicated "[n]o change" in Plaintiff's knees or ankles when compared with his previous x-rays taken on November 14, 2000. (Tr. 270).  Overall both the ankle and knee images revealed a "[n]ormal stud[ies]." (Tr. 270).  A September 23, 2009 x-ray of Plaintiff's right shoulder was also "[n]ormal" and showed "[n]o change" when compared with x-rays taken on November 14,

---

[10] Sedentary work involves:

> [L]ifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

2000. (Tr. 271).  Plaintiff's lumbar spine x-ray showed well-maintained disc space height and likewise revealed "no significant degenerative changes" when compared to x-rays from November 14, 2000 (Tr. 279).  Examination of the spine did not show any muscle spasm, localized tenderness or guarding severe enough to affect Plaintiff's gait or spinal contour. (Tr. 275).  A May 27, 2010 exam also showed no evidence of joint redness or warmth. (Tr. 258).  Consistent with Dr. Wilson and Plaintiff's RFC, the VA found he could stand for up to an hour and walk more than ¼ of a mile but less than one mile (Tr. 267), that his impairments decreased his mobility and manual dexterity and caused problems with lifting and carrying, although not to the extent found by Dr. Bourg. (Tr. 271).

Ultimately, "the ALJ is responsible for resolving conflicts in the evidence, and we will not substitute our judgment for his." *Cain*, 193 F. App'x. at 360.  The medical and testimonial evidence discussed above provides substantial support for the ALJ's decision to discredit Dr. Bourg and find Plaintiff capable of sedentary.  As such, remand is outside the appropriate exercise of the Court's authority on review.

Aside from the evidence, Plaintiff urges that the ALJ impermissibly rejected Dr. Bourg's opinion in part because he felt Bourg sympathized with Plaintiff. (R. Doc. 21 at 12).  Plaintiff suggests "this is not a permissible basis to reject the findings of a treating physician in that it amounts to speculation and conjecture." (R. Doc. 21 at 15).  Contrary to Plaintiff's argument, as the trier of fact the ALJ acted within his authority to reject Dr. Bourg's opinion for this reason. *See Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) ("The ALJ may also reject a treating physician's opinion if he finds, with support in the record, that the physician is not credible and is leaning over backwards to support the application for disability benefits." (quotations omitted)); *Stafford v. Barnhart*, 402 F. Supp. 2d 717, 726 (E.D. Tex. 2005) ("[T]here would be

no *legal error* if an administrative law judge were to discredit a physician's opinion on the basis that the physician was leaning over backwards to support the application for disability benefits." (quotations omitted)).

Even if the ALJ erred, the Court declines to accept Plaintiff's argument because any error on this ground would be harmless.  The ALJ's decision focuses very little on Dr. Bourg's sympathy for Plaintiff.  Instead, the majority of it relies on medical records from various physicians showing Plaintiff is capable of gainful employment at some level higher than Dr. Bourg recommended.  *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (Fifth Circuit declined to address whether ALJ made his own medical conclusions because "the overwhelming factor in the [ALJ's] decision was medical evidence from a variety of sources" that claimant could handle working in her prior job).  The ALJ specifically notes that Dr. Bourg's findings were not consistent with the record or testimony and offers sympathy as a "possibility" for the inconsistency. (Tr. 18).  Substantial evidence supports the ALJ's decision, regardless of whether he thought Dr. Bourg sympathized with Plaintiff.

**B.    Credibility**

In assessing credibility, the ALJ must consider the entire record, including medical signs and laboratory findings and statements by the claimant and his or her treating or examining sources concerning the alleged symptoms and their effects. 20 C.F.R. § 404.1529(c)(1). Additionally, the regulations provide a non-exclusive list of factors that the ALJ must consider. See 20 C.F.R. § 404.1529(c) (2011).[11]  Nevertheless, the Fifth Circuit has held that the ALJ is

---

[11] These factors include:

    (i)       Your daily activities;
    (ii)      The location, duration, frequency, and intensity of your pain or other symptoms;
    (iii)     Precipitating and aggravating factors;
    (iv)     The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

not required to follow "formalistic rules" in assessing credibility, and the ALJ must articulate his or her reasons for rejecting a claimant's subjective complaints only "when the evidence clearly favors the claimant." *Falco*, 27 F.3d at 163.

Ultimately, the mere existence of pain is not an automatic ground for disability, and subjective evidence of pain does "not take precedence over conflicting medical evidence." *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989).  Likewise, an individual's statements regarding pain and other symptoms alone are not conclusive evidence of disability and must be supported by objective evidence of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Harper*, 887 F.2d at 96 (quoting 42 U.S.C. § 423(d)(5)(A)).

Here, the ALJ began his credibility analysis by fully discussing Plaintiff's testimony (Tr. 15), then proceeded by detailing all of the medical evidence of record and explaining the particular evidence that contradicted Plaintiff's allegations.  The ALJ ultimately found "several reasons" why the alleged severity of Plaintiff's symptoms was not "wholly credible." (Tr. 17). The ALJ first explained that the record did not include any medical opinions "indicating the claimant is disabled." (Tr. 17).  Next, Plaintiff alleged "fairly limited" daily activities which were not objectively verified or supported by the "relatively weak medical evidence." (Tr. 17). Finally, the ALJ considered Plaintiff's history of "essentially routine and/or conservative" treatment.

---

(v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)   Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

Plaintiff claims his "allegations of debilitating symptoms should be deemed credible" because (1) the record does include evidence from treating and examining physicians finding him disabled, (2) he has described "fairly limited" daily activities, and (3) his treatment has been routine and conservative. (R. Doc. 21 at 14-15).  Plaintiff goes on to suggest that his "medically determinable impairment could reasonably be expected to cause the alleged symptoms" and that the "persistence and limiting affects of these symptoms are *consistent* with the residual functional capacity assessment." (R. Doc. 21 at 15) (emphasis added).  In other words, Plaintiff seems to suggest that the ALJ's RFC assessment is consistent with the limitations resulting from his impairment, which would negate his credibility argument.  Nonetheless, the Court has considered Plaintiff's allegations and the entire record and finds substantial evidence supports the ALJ's decision.

Despite Plaintiff's contention, the Court's review confirms the ALJ's statement that "the record does not contain any opinions from treating or examining physicians indicating" he is disabled. (Tr. 17).  As Plaintiff does not name any particular doctor or cite any record evidence whatsoever to contradict the ALJ, this contention fails.  Next, the ALJ found, consistent with Plaintiff's contention, that his treatment has been routine and conservative.  However, as the ALJ indicated, this finding generally weighs against Plaintiff. *Franzen v. Astrue*, 555 F. Supp. 2d 720, 730-31 (W.D. Tex. 2008) (ALJ appropriately considered claimant's history of "conservative care" and lack of objective corroborating evidence to discredit his allegations).  Finally, the fact that Plaintiff has described "fairly limited" activities is not dispositive of whether that description is credible.  The activities described by Plaintiff must be considered — as they were — against the backdrop of the record evidence as a whole.  And so, Plaintiff's description of his activities as "fairly limited" is largely immaterial where those limitations are not otherwise corroborated

by objective evidence.  Again, Plaintiff cites no evidence to support a finding that his impairments limit his daily activities to a level inconsistent with the performance of sedentary work.

The ALJ ultimately explained that Plaintiff's allegations were not objectively corroborated by the record, which supported an RFC of sedentary work.  As the Court previously explained, this finding is substantially supported by the record evidence.  Plaintiff does not offer any additional argument or cite any record evidence to contradict the ALJ's credibility or RFC findings.  And so, the Court finds the ALJ's RFC and credibility assessments are supported by substantial evidence.

## C.    Department of Veterans Affairs Disability Rating

Generally, a disability rating by the Department of Veterans Affairs (VA) is "not legally binding on the Commissioner," because the two agencies use different criteria to determine disability.[12] *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *see also* 20 C.F.R. § 404.1504 ("a determination made by another agency that you are disabled or blind is not binding on" the SSA); SSR 06-03P, 2006 WL 2329939, at *6 (Aug. 9, 2006) (disability determinations of other agencies are not binding because "final responsibility for deciding . . . whether you are disabled, is reserved to the Commissioner").  Nonetheless, a VA rating is still entitled to a "certain amount" of weight and must be considered by the ALJ. *Chambliss*, 269 F.3d at 522; *see also Loza v. Apfel*, 219 F.3d 378, 394-95 (5th Cir. 2000) (100% VA disability rating not binding but entitled to "great weight" and could not be disregarded); SSR 06-03P, 2006 WL 2329939, at *6 ("cannot be ignored and must be considered").  The appropriate weight "will vary depending upon the factual circumstances of each case." *Chambliss*, 269 F.3d at 522 (substantial evidence

---

[12] The Department of Veterans Affairs (VA) and the SSA are both federal agencies that administer disability programs to provide benefits to disabled individuals. *See* 38 C.F.R. § 4.1 (VA's "Essentials of evaluative rating"); 20 C.F.R. § 404. 1520(a)(4)(i)-(v) (SSA's "Evaluation of disability in general").

supports decision if ALJ considered rating and "adequately explain[ed] the valid reasons" *Id.* at 522-23).

"An ALJ may ultimately disagree with the findings of the VA if the findings and the underlying evidence are considered." *Welch v. Barnhart*, 337 F. Supp. 2d 929, 935 (S.D. Tex. 2004).  In that situation, "there is no reversible error as long as the record reflects consideration of those findings." *Id.*; *see also Moody v. Astrue*, No. 10-230, 2012 WL 1019590, at *5 (N.D. Tex. March 9, 2012) (no "bright-line rule" exists, but decision must at least "show meaningful consideration of the VA disability determination and provide specific reasons" for giving it less weight).

Here, the ALJ discussed both the VA medical records and the VA disability determination. (Tr. 16, 20).  The ALJ considered the VA disability rating but discounted it as inconsistent with the medical records, Plaintiff's testimony and the testimony of the vocational expert. (Tr. 20).  Nonetheless, Plaintiff claims the "ALJ did not give adequate consideration to the findings of the Department of Veterans Affairs." (R. Doc. 21 at 15).  Other than this suggestion, Plaintiff does not make any argument as to why the consideration was inadequate or why the ALJ's reasons were invalid.  Because the ALJ considered both the VA's rating and medical evidence and Plaintiff does not offer any argument or specific allegation to support this claim, the Court cannot find error. *See Vaught v. Astrue*, 271 F. App'x 452, 455 (5th Cir. 2008) (claimant "does not explain why the ALJ's reasons for not giving the VA disability determination greater weight were erroneous, and therefore leaves us with no basis upon which to find error"); *Kinash v. Callahan*, 129 F.3d 736, 739 (5th Cir. 1997) (The ALJ "considered both of the agencies findings and the evidence underlying each. The [ALJ] chose to disagree with those findings. This alone is not reversible error.").

20

## VI.    CONCLUSION

For the reasons discussed above, **IT IS ORDERED** that the Commissioner's decision is

**AFFIRMED** and Plaintiff's appeal is **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on March 21, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**